O. B. DAGLEY, A. L. LOWE, H. C. SCHILD-KNECHT, C. H. COLSON and L. C. ALLEN, Relators, Appellants, v. HUGH McINDOE, CHARLES A. ROBINSON, DANIEL R. HILL, J. B. HODGDON, CHARLES PATTERSON and O. E. LICHLITER, Respondents.

Springfield Court of Appeals, May 18, 1915.

1. MUNICIPAL CORPORATIONS: Initiative Petition for Ordinance: Petitioner's Right to Withdraw Name. An elector who has signed a petition seeking the passage of an ordinance by initiative (Sec. 29, p. 443, Session Laws 1913) can withdraw his name from the petition after the same has been filed in the office of city clerk but before the clerk makes his certificate to the city council.

2. ———: ———: Duty of Clerk: Judicial and Discretionary. Under Laws 1913, p. 443, sec. 29, the duty imposed on the city clerk of determining the sufficiency of an initiative petition, is not merely ministerial, but is judicial or discretionary.

3. ———: ———: Insufficient Petition: Not a Bar to Later Action. Under Laws 1913, p. 443, sec. 29, because an initiative petition which is filed is insufficient, the right of fifteen per cent of the qualified electors to obtain action later is not barred.

Appeal from Jasper County Circuit Court, Division Number Two.—Hon. David E. Blair, Judge.

AFFIRMED.

Pearson & Butts for appellants.

(1) The motion for judgment on the pleadings was in effect a demurrer to the answer. State ex rel.

v. Adams, 161 Mo. 349; Bank v. Stone, 93 Mo. App. 292; State ex rel. v. Delmar Jockey Club, 200 Mo. 63. (2) Where there is a limitation in respect of the filing of a petition such limitation operates against the withdrawal of signers just as it does against further petitioners. Sedalia v. Montgomery, 227 Mo. 1; State ex rel. v. Gregory, 127 N. W. 733; State v. Gerhardt, 44 N. E. 469, 33 L. R. A. 313; Sutherland v. McKinney, 45 N. E. 1048. (3) Neither the city clerk nor city council has authority to permit or consider amendments by dismissing petitioners after petition filed. Sec. 29, Sess. Acts, 1913, p. 444; State ex rel. v. Campbell, 120 Mo. 396; State ex rel. v. Carter, 257 Mo. 52, 165 S. W. 773.

*E. F. Cameron* and *Haywood Scott* for respondents.

(1) To the same effect, it was permissible and proper, persons who signed the petition to withdraw from the same at any time before the clerk attached his certificate to the petition prior to its being submitted to the city council for action on the same. The question is whether or not the required number of registered electors are petitioners at the time the clerk attaches his certificate showing the number of petitioners and submits the same to the city council for action, not whether the required number were petitioners at the time the petition was filed with the clerk. Sedalia v. Montgomery, 227 Mo. 1; Sedalia v. Montgomery, 109 Mo. App. 197; La Londe v. Board of Supervisors, 49 N. W. 960; People ex rel. v. Sawyer, 52 N. Y. 296; Hays v. Jones, 27 Ohio St. 218; Dutten v. Village of Hanover, 42 Ohio St. 215; Hard v. Elliott, 33 Ind. 220; Black v. Campbell, 112 Ind. 122, 13 N. E. 409; State v. Eggleston, 34 Kan. 714, 10 Pac. 3; State ex rel. v. County Commissioners, 10 Neb. 32; 4 N. W. 373; State v. Polk County, 60 N. W. 266; Slingerland v. Norton, 61 N. W.

(Minn.) 322; Little v. Board of Supervisors, 65 N. E. 78; Kinsloe v. Pogue, 72 N. E. 906; Theurer v. People, 71 N. E. 1000; State ex rel. v. Board of Commissioners, 111 Pac. 144; Lippincott v. Carpenter, 127 Pac. 557; State ex rel. v. Grieb, 68 N. W. 1081; Noble v. City of Vincennes, 42 Ind. 125; Ralston v. Beall et al., 30 N. E. 1095; State ex rel. v. Board of Commissioners, 73 N. W. 631; 11 Cyc. 372. (2) Even where the petition has been submitted to the council for action on the same, petitioners may withdraw from the petition at any time before the council takes action on the same. Little v. Board of Supervisors, 65 N. E. 78; Kinsloe v. Pogue, 72 N. E. 906; Theurer v. People ex rel., 71 N. E. 997, 1000; Slingerland v. Norton, 61 N. W. 322; State ex rel. v. Grieb, 68 N. W. 1080, 1081. (3) Where a statute makes it the duty of a body to order an election whenever a petition signed by a specified percentage of qualified voters shall be presented to them asking for such election, the presentation of a petition signed by the required number of legal voters is necessary to confer jurisdiction on the body to call the election; and where a certain time is allowed the body or the clerk of the body to examine registration books and compare the names on the petition with the names on the registration books and ascertain whether the requisite number have signed the petition, pending such investigation, voters who have signed the petition may withdraw from the petition; and where such withdrawal leaves the petition without the required number of signatures, the body has no jurisdiction to order the election. LaLonde v. Board of Supervisors, 49 N. W. 960. Also cases cited under subdivision 1 above. (4) Where the council or the clerk are required by the statute to inquire into and determine what, if any, signatures to a petition should be deducted therefrom and file their certificate thereof and according to such certificate, the petition is insufficient, the determination of the council

Dagley v. McIndoe.

or the clerk in that regard, in the absence of fraud, is conclusive. Currie v. Paulson, 45 N. W. 855.

FARRINGTON, J.—Appellants herein filed a petition for a writ of mandamus against the mayor, city council, and city clerk, seeking to force the city council of the city of Joplin to pass an ordinance fixing a license tax on plumbers, or to call a special election for the purpose of passing such an ordinance by a vote of the people on the initiative plan provided for in the charter for cities of the second class operating under what is known as the commission form of government. [See Sec. 29, p. 443, Sess. Laws 1913, "Ordinance by Initiative."]

The issuance of an alternative writ of mandamus was waived, and an answer in lieu of a return was filed by agreement of the parties. The relators (appellants) demurred to the answer on the ground that it did not state facts sufficient to constitute an answer in the cause, nor to defeat the relators' right to a peremptory writ of mandamus. The court overruled the demurrer, and the relators stood upon the question raised by the demurrer and bring their appeal to this court alleging error in the trial court's action.

The answer filed denies each and every allegation in the relators' petition, except that respondents are the legally elected and qualified officers of the city of Joplin, and then sets forth the facts upon which the respondents rely to defeat the right to a peremptory writ of mandamus as prayed in the petition. After the general denial, the answer proceeds as follows:

"Further answering, respondents state that on the eighth day of September, 1914, there was filed in the office of the city clerk of the city of Joplin, an initiative petition, praying for the enactment of an ordinance providing for the licensing of plumbers and fixing the license tax on persons engaged in the business of plumbing in said city, a copy of which initiative peti-

tion, including said proposed ordinance, is filed with the petition for mandamus herein and marked 'Exhibit A.'

"That said petition contained the signatures of about twelve hundred persons. That within ten days from the date of the filing of said petition in the office of the city clerk, there was filed in the office of said city clerk a petition addressed to the mayor and council of said city signed by the same persons who had signed said initiative petition, and requesting that their names be withdrawn from said initiative petition, which said withdrawal petition was filed before said initiative petition was submitted by said city clerk to said city council and before said city council had acted upon said initiative petition, which said withdrawal petition contained the names of a sufficient number of persons who had signed said initiative petition to reduce the number of names on said initiative petition below fifteen per cent of the entire vote cast for all candidates for mayor at the last preceding election at which a mayor was elected in said city.

"That within ten days from the date of the filing of said initiative petition the city clerk of said city of Joplin duly examined said initiative petition and from the registration books ascertained that said petition was not signed by the requisite number of registered electors, and that said city clerk did thereupon attach to said initiative petition his certificate showing the result of said examination. That by said clerk's certificate the said petition was shown to be insufficient.

"That thereupon said city clerk presented said initiative petition and said withdrawal petitions, together with his said certificate to said city council at a duly and regularly called meeting of said city council, and that said city council at said meeting duly examined said initiative petition and withdrawal petition and said clerk's certificate, and found that said initiative petition did not contain the names of electors equal

in number to fifteen per cent of the entire vote cast for all candidates for mayor at the last preceding election at which a mayor was elected, after the names of said persons who had signed said withdrawal petition had been withdrawn from said initiative petition and after deducting from said initiative petition the names of persons who were not registered electors in said city of Joplin; and thereupon said city council ordered said initiative petition returned to the circulators thereof for amendment.

"That thereupon said city clerk duly returned said initiative petition to the circulators thereof for amendment, and that within ten days from the date of said certificate of said clerk the said circulators of said initiative petition amended the same by the addition of the names of other persons to said petition, and then, on the 28th day of September, 1914, filed said amended initiative petition in the office of said city clerk.

"That thereafter within five days from the date of the filing of said amended initiative petition in the office of said clerk, the same persons who had signed said amended initiative petition filed in the office of the city clerk a withdrawal petition addressed to the mayor and council of said city of Joplin requesting that their names be withdrawn from said amended initiative petition, which withdrawal petition contained the names of a sufficient number of persons who had signed said amended initiative petition to reduce the number of names on said amended initiative petition below fifteen per cent of the entire vote cast for all candidates for mayor at the last preceding election at which a mayor was elected in said city, which said withdrawal petition withdrawing the names of said persons from said amended initiative petition was filed in the office of the city clerk before said amended initiative petition had been submitted to said council by said clerk, and before said council had acted upon said amended initiative petition.

"That within five. days after said amended initiative petition had been filed in the office of said clerk, the said clerk made a like examination of said amended initiative petition and found that said amended initiative petition did not contain the names of electors equal in number to fifteen per cent of the entire vote cast for all candidates for mayor at the last preceding election at which a mayor was elected, and did thereupon duly attach to said amended initiative petition his certificate showing the result of said examination.

"That said amended initiative petition and said withdrawal petition of said persons withdrawing their names from said amended initiative petition were then by said city clerk duly presented to said city council at a duly and regularly called meeting of said council; and that at said meeting said city council duly examined said amended initiative petition and said withdrawal petition and said certificate of said city clerk and found that said amended initiative petition did not contain the names of electors equal in number to fifteen per cent of the entire vote cast for all candidates for mayor at the last preceding election at which a mayor was elected, and said city council thereupon ordered said amended initiative petition returned to the persons filing the same. . . ."

The question presented is whether or not an elector who has signed a petition seeking the passage of an ordinance by initiative under section 29, page 443, Sess. Laws 1913, can withdraw his name from the petition after the same has been filed in the office of the city clerk but before the clerk makes his certificate to the city council. The respondents contend that under this statute the petitioner has such right to withdraw his name from the petition at any time prior to the time the city council acts upon the petition, or at least before the clerk certifies it to the council as being a sufficient petition.

The statute in question, so far as material to the question before us, is as follows:

## "ORDINANCE BY INITIATIVE.

"Sec. 29. *Ordinance by initiative, how conducted.* —Any proposed ordinance may be submitted to the council by petition signed by registered electors of the city equal in number to the percentage hereinafter required. The signatures to the petition need not all be appended to one paper, but each signer shall add to his signature his place of residence, giving the street and number. One of the circulators of each such paper shall make oath before an officer competent to administer oaths, that the statement(s) therein made are true, and that each signature to the paper appended is the genuine signature of the person whose name purports to be thereunto subscribed. Within ten days from the date of filing such petition, the city clerk shall examine and from the registration books ascertain whether or not said petition is signed by the requisite number of registered electors, and if necessary, the council shall allow him extra help for that purpose, and he shall attach to said petition his certificate, showing the result of said examination. If, by the clerk's certificate, the petition is shown to be insufficient it may be amended within ten days from the date of said certificate. The clerk shall, within five days after such amendment, make like examination of the amended petition, and if his certificate shall show the same to be insufficient, it shall be returned to the person filing the same, without prejudice, however, to the filing of a new petition to the same effect. If the petition shall be found to be sufficient, the clerk shall submit the same to the council without delay. If the petition accompanying the proposed ordinance be signed by electors equal in number to fifteen per cent of the entire vote cast for all candidates for mayor at the last preceding

election at which a mayor was elected, and contains a request that said ordinance be submitted forthwith to a vote of the people at a special election, then the council shall either:

"(a)    Pass said ordinance, without alterations, within twenty days after the attachment of the clerk's certificate of sufficiency to the accompanying petition (subject to a referendary vote, as hereinafter provided); and if the ordinance shall fail of passage in the council, the council shall proceed to call a special election, at which said ordinance, without alteration, shall be submitted to a vote of the people; . . ."

It is argued by appellants that when under this statute a petition is once filed containing at that time a sufficient number of electors as signers, that is, fifteen per cent, then, regardless of what occurs between the time of the filing of the petition and the time the council takes action on the petition the ordinance must either be passed by the council or a special election called.

We cannot give our assent to such construction of the statute. On the other hand, it seems to us that it was clearly intended to be a means of getting ordinances passed and in force when it is shown to the council by petition, at the time the question is put up to that body to act upon, that there is a sufficient number of qualified electors in the city who desire such legislation. The mere filing of a petition does not mean that a special election is to be called, because the council may conclude at that time to pass the ordinance in the regular way; it will be remembered that the council already has the power to pass such ordinance in the absence of any initiative petition, so that it cannot be said that the filing of such a petition gives the council jurisdiction to act as in the case of a street paving improvement where the council must obtain its jurisdiction by an acquiescence in the proposed measure by a majority of the qualified property owners failing to

file a petition within the time allowed. In this respect this case differs from any cited in the briefs of counsel, most of which relate to petitions for local option elections, or concern street improvements, or county seat removals, or road and drainage improvements, in none of which does it appear that the body to whom the petition is addressed has power on its own motion to pass the law or call an election for the purpose of determining the question by the voters.

It therefore becomes necessary for us to examine this statute and determine whether the calling of a special election is mandatory or authorized by the city council after it has refused as a legislative body to pass the proposed ordinance. To begin with, the petition is filed with the clerk. He is given ten days, not only to examine, but to "*ascertain* whether or not said petition is signed by the requisite number of *registered* electors;" so that the clerk is required to do more than a mere ministerial act of counting names on the petition; he must "ascertain"—an act judicial or discretionary rather than arithmetical. In this, his duties are broader than those of the Secretary of State when a petition for the initiative or referendum is presented under the amendment to the Constitution of Missouri. [See, State ex rel. Kemper v. Carter, 257 Mo. l. c. 77, 165 S. W. 780.] The statute we are dealing with allows the city clerk, if necessary, extra help to ascertain and pass on the facts which he must make a report of to the city council. In case he rightly finds that the petition is insufficient, no one would contend that the filing of the same containing ostensibly enough names would give jurisdiction to call a special election. But the act provides that when the petition is found to be insufficient the original petition may be amended; that is, if enough qualified electors have not signed it, more names may be added within ten days—and that is what was done in this case. Again the clerk must count and ascertain whether the amended petition is suffi-

cient.  It therefore appears that the act expressly recognizes that more signers may be added after the filing of the original petition.  If the clerk then finds that it is insufficient it is to be returned to the circulators, but this shall in no way prejudice the right to file a new petition to the same effect.  It is therefore certain that the statute provides for the addition of new names after the original petition has been filed and found insufficient; and in no event does an insufficient petition bar or prejudice the right of fifteen per cent of the qualified electors to later obtain action on the proposed measure.  The statute does not fix any date on which the special election shall be held (except when a five per cent petition is submitted the question must be submitted at the next regular municipal election, but that is not involved here), but the date of an election under the fifteen per cent provision is left to the council with only the requirement that the council shall proceed forthwith to call the special election after the clerk reports a sufficient petition.  This case therefore differs from that character of cases (such as State ex rel. Ketterling v. Gregory, 127 N. W. 733, 736) where the date of the election is fixed at a certain time after the petition is filed.

As has been pointed out, the statute is most liberal in permitting the filing of petitions for the passage of ordinances and amendment to such petitions and contains no express prohibition against the withdrawal of a signer before the petition is acted on; and we can see no good reason for placing a strict construction on the statute, with respect to withdrawals, in the face of a liberal enactment as to signers.

As was said in the case of State ex rel. Morgan v. The County Commissioners, 4 N. W. 373, 375: "The petition is only a means of determining that at least three-fifths of the legal voters of a county are in favor of the relocation of a county seat, and that an election called for the purpose of submitting such question to

the people of the county, will in all probability result
in the relocation of the county seat.'' So in our case,
the petition is the means of advising the city council
at the time it goes to act that there are at least fifteen
per cent of the qualified electors in the city who desire
the proposed ordinance passed.

A somewhat similar question has been passed on
in this State in the case of City of Sedalia ex rel. Gil-
sonite Construction Co. v. Montgomery, 109 Mo. App.
197, 88 S. W. 1014, which was approved and adopted by
our Supreme Court (Id., 227 Mo. 1, 127 S. W. 50), hold-
ing that the petitioners who sign a remonstrance
against street paving can withdraw their names from
the petition at any time before the ten day limit ex-
pires although the petition bearing their names has
been filed with the city clerk. If the rule, once a re-
monstrator always a remonstrator, does not apply to
street paving cases where the number of qualified sign-
ers determines the jurisdiction, we can see no good rea-
son to hold that once a petitioner always a petitioner
should be the rule where the number of signers goes
to the jurisdiction of and requires the council to call
a special election. The opinion of the St. Louis Court
of Appeals in the Montgomery case, supra, was adopted
*in toto* by the Supreme Court. The learned judge who
voiced the opinion of the St. Louis Court of Appeals
in that case discussed many of the cases cited in the
briefs in our case, and the Supreme Court in adopting
that opinion, we take it, approved the rulings in the
cases cited and discussed with approval therein, and
by doing so indicates what the view of the Supreme
Court of this State is on the right to withdraw names
from a petition at least before final action by the clerk
is taken thereon, although filed. In one of the cases
cited with approval by the St. Louis Court of Appeals
(State ex rel. Morgan v. The County Commissioners,
4 N. W. 373, 374) we find the following language:

"Their action in signing the same is entirely voluntary, and if they withdraw their names, either directly or by erasure from the petition, or by signing a remonstrance against calling said election, their names cannot be counted by the commissioners as petitioners. And if parties have been induced by misrepresentations to sign such petition, they may undoubtedly go before the board and state the facts as to such misrepresentations, and demand that their names be stricken from the petition, or not counted as petitioners. The commissioners should not call an election for such purpose unless they find at the time of calling said election that more than three-fifths of the voters, as shown by the returns of the last general election, are then petitioners for such election. It is not the intention of the law to subject the people of a county to expense, annoyance, and animosities not infrequently attending an election for the relocation of a county seat unless it appears that the requisite number of voters are at the time of calling the same in favor of such election." The case of Hays v. Jones, 27 Ohio St. 218, also cited with approval by the St. Louis Court of Appeals in the Montgomery case, contains the following language (p. 231): "The statute cannot mean that, if there is a majority of qualified persons at some time between the commencement of the proceedings and the time the final order is made, whether there be such majority at that time or not, the improvement may be ordered. As held on the first proposition, this jurisdictional majority must be found in the attitude of asking for the improvement at the time the proposed final order is to be made; and one who has subscribed the petition may, at any time before the board makes the final order, by remonstrance or other unmistakable sign, signify his change of purpose. His assent is within his own control up to the time the commissioners move to make the final order." Similar excerpts may be found in State ex rel. Streissguth v. Geib, 68 N. W. 1081; Green v. Smith,

82 N. W. 448; Perkins v. Henderson, 68 Miss. 631; Sauntmann v. Maxwell, 154 Ind. 114; and People ex rel. Irwin v. Sawyer, 52 N. Y. 296; all cited with approval by the St. Louis Court of Appeals in the Montgomery case and adopted by the Supreme Court when the case later reached that court.

A similar question to the one at bar was presented in the case of Londe v. Board of Supervisors of Barron County, 49 N. W. 960, where only a reasonable time to investigate the qualifications of the signers was allowed (it is ten days in the first instance and five days in the second under the statute we are considering), and while such investigation was being made there were withdrawals filed by certain signers of the petition and the court held that they would not be counted as signers of the petition merely because their names were originally contained therein. As to this, the court said: "For what valid objection is there, either in law or on grounds of public policy, against allowing a person who has signed a petition asking for the removal of the county seat from withdrawing his name from the petition before it is acted upon by the board? As the learned counsel for the defendants say, a person may have been deceived or entrapped, or through inadvertence or thoughtlessness may have signed such a petition, and, on reflection, and before action is taken on it, may desire to correct his action, and withdraw his name. Why should he not have the right and privilege of doing so? An intelligent man, acting deliberately and understandingly, may change his mind on such a question, and conclude that he has made a mistake in asking for a change of the county seat, and that the public interest will be promoted by having the county seat remain where it is. All this is plain and obvious to any one reflecting on the subject."

There is a splendid note collating the authorities on the right of a petitioner to withdraw his name in 15 Am. and Eng. Anno. Cas., beginning on page 1125,

Dagley v. McIndoe.

where, under the heading, "View sustaining the right to withdraw," are many citations, among which will be found the cases herein referred to.

We hold that the Legislature clearly intended that a petition filed to pass an ordinance by initiative must contain fifteen per cent of the qualified electors when it is finally certified up to the council for action thereon, and that there is no bar on a petitioner who voluntarily signed from voluntarily withdrawing, provided he does so before the council has taken action or at least before the city clerk certifies a sufficient petition, and that when he has so withdrawn he is not to be counted as a petitioner in ascertaining whether there is the required percentage of electors as signers. To hold otherwise would, in our judgment, put a strict and unreasonable construction upon a statute which in other respects is liberal and open to all who bring themselves within its terms. The statute was not intended to be applied as a rule in a checker game where once your hand is off the man the move is final, but is intended to give all who actually desire the passage of the proposed measure every opportunity to obtain the required number on a petition finally put up to the city council for action.

While there are some cases referred to in the note in 15 Am. and Eng. Anno. Cas. 1125, above cited, which deny the right of a petitioner to withdraw his name after the petition is once filed, we think the weight of authority and the better reasoning is the other way, and that the Supreme Court of Missouri in the Montgomery case, supra, has placed its approval on the cases upholding the right to withdraw.

The judgment is accordingly affirmed. *Robertson, P. J.,* and *Sturgis, J.,* concur.