SCHOOL DISTRICT NO. 74, KINGFISHER COUNTY, VS. W. C. LONG, *County Clerk.*

1. SCHOOL DISTRICT — *Capacity to Sue* — A school district has such an interest in the subject matter, and capacity to sue, in an action brought to restrain the county clerk from taking from the tax roll of such school district, property which properly belongs to such school district for taxation.

2. POWER OF SCHOOL BOARD — *To Attach Adjoining and Adjacent Territory* — Under an act of the legislature which provides that territory outside of the limits of the city, but adjoining thereto, may be attached to such city for school purposes upon application to the board of education of said city, by a majority of the electors of such adjacent territory, it is not necessary that the lands attached, as

described by the survey, should lie next to or contiguous to the city limits, but lands which lie adjacent to the city limits but join and are a part of the entire body of lands which are attached to such city for school purposes, may be attached.

*Error From the District Court of Kingfisher County.*

Injunction.

*Burwell & Burwell,* for plaintiff in error.

*Roberts & Brownlee,* for defendant in error.

The opinion of the court was delivered by

BIERER, J.: The plaintiff in error, school district No. 74, Kingfisher county, Oklahoma Territory, brought this action of injunction in the district court of Kingfisher county against W. C. Long, county clerk of Kingfisher county, to enjoin him from transferring certain specified tracts of real estate mentioned in the petition, and the personal property belonging to certain parties residing on said lands, from the tax roll of plaintiff's school district, and from removing said lands and personal property of the residents thereon from the tax rolls so that the same might be relieved of the school tax assessed in said district. The petition, in substance, alleged that the plaintiff is a public corporation under the school laws, in Kingfisher county; that the defendant is the county clerk of Kingfisher county; that on the 2d day of October, 1893, the board of education of the city of Kingfisher, in Kingfisher county, Oklahoma Territory, at a meeting of said board made an order and resolution as follows:

"KINGFISHER, O. T., Oct. 2, 1893.

"The school board of Kingfisher City, having been petitioned as provided by law to attach the following described territory to Kingfisher school district for school purposes, and we, said school board, finding that said petition is true, hereby order the same attached for school purposes, to-wit:  N. E. ¼ of 16-16-7; S. E. ¼ of 9-16-7; S. ½ of N. E. ¼, 9-16-7; S. ½ 3-16-7; sec. 10-16-7; W. ½, N. W. ¼ of 11-16-7; S. W. ¼ of 11-16-7 and

W. ½, 14-16-7, as shown by said petition now on file in the office of school board of Kingfisher City.

"C. P. WICKMILLER, Sec."

That the said lands mentioned in this resolution, had, prior to that, been a part of said school district No. 74, Kingfisher county, and that none of said lands adjoined the limits of Kingfisher city; that the track of the Chicago, Kansas & Nebraska Railway company extends across part of said lands; that the plaintiff had levied a tax on said lands, with the other lands in its school district, for school purposes, and that the county clerk, in pursuance to the order of the board of education of the city of Kingfisher, was about to proceed, and would, unless restrained, proceed to transfer said lands for taxation from the rolls of said plaintiff school district to the school district of the city of Kingfisher, and that thereby plaintiff will be greatly and irreparably injured, and that plaintiff has no adequate remedy at law.

To this petition a demurrer was interposed and sustained by the court, to which plaintiff excepted and brings the case here for review on appeal.

The demurrer is in four paragraphs, but contains but two statutory grounds for demurrer, (1) that the plaintiff has no legal capacity to sue; and, (2) that the petition does not state facts sufficient to constitute a cause of action.

The plaintiff did have legal capacity to sue. It was a school district, under the provisions of art. 2, ch. 73 of the School Laws of Oklahoma of 1893. It was a corporation, organized for the public purpose of providing public schools in its district. It had power to sue and be sued. It had power to protect the revenues of said school district, and prevent the disposition thereof by any wrongful conduct of any person, corporation or individual. It had an interest in maintaining the schools of said district, which could only

be done by a protection of the revenue of said district. The revenue for the carrying on of the schools of said district could only be raised by taxation.

Legal capacity to sue is power or authority in the individual or corporation to maintain an action for the redress of the particular injury claimed to have been committed, and not the ultimate right to recover in the action itself.

Legal capacity to sue does not depend upon the ultimate right to recover, but if the party suing has a right to redress of the wrongs alleged to have been committed, admitting that the wrong was committed, then he has legal capacity to sue.

If the order made by the board of education of the city of Kingfisher was void, and was made without jurisdiction to make it, and the county clerk, upon the authority of such void order, is about to do an official act detrimental to the well-being and existence of plaintiff's school district, then the plaintiff has an interest in the subject matter and has legal capacity to bring this action. (*Commissioners of Sedgwick Co. vs. Bailey*, 11 Kan. 631; *Commissioners of Marion Co. vs. Commissioners of Harvey Co.*, 26 Kan. 181; *City of Zanesville vs. Richards*, 5 Ohio St. 590).

The case of *School District No. 57 vs. Board of Education of the City of Emporia, et al.*, 16 Kan. 536, and *School District No. 8 of Jefferson Co. vs. Gibbs, County Clerk*, 35 Pac. Rep. 222, are cited by the defendant in error as opposed to this view of the law. These authorities, however, do not touch the question. The first one held that an act which empowers a board of education of a city of the second class to attach to such cities for school purposes adjacent territory, upon the application of the electors of said territory, is constitutional, and that no notice to the school district to which such territory previously belonged was

necessary; the second, that a school district cannot, by injunction, restrain the collection of taxes on land detached from its territory, and included in a newly formed school district, nor restrain the school district officers of such newly-created district from acting as such, nor control the action of the county superintendent in the discharge of his official duties in relation thereto.

In neither of these cases was it held that the injured school district would not have capacity to sue if the action detaching its territory was void, and that property properly belonging to its school district was being improperly removed from it for a taxable purpose by action of the county clerk.

The real and substantial question in this case is as to whether or not the board of education of the city of Kingfisher, a city of the first class, had power and authority to attach these lands described in plaintiff's complaint, and which particular tracts of land are alleged not to adjoin the city limits of the city of Kingfisher, to such city for school purposes.

Section 2 of art. 7, ch. 73, of the laws of Oklahoma, 1893, provides:

"Sec. 2.    Territory outside the limits of any city, town or village, but adjourning thereto, may be attached to such city, town or village for school purposes, upon application to the board of education of such city by a majority of the electors of such adjacent territory, and upon such application being made to the board of educaton they shall, if they deem it proper and to the best interests of the schools of said city and the territory seeking to be attached, issue an order attaching such territory to such city for school purposes, and to enter the same upon their journal; and such territory shall, from the date of such order, be and compose a part of such city for school purposes only; and the taxable property of such adjacent territory shall be subject to taxation, and shall bear its full proportion of all expenses

incurred in the erection of school buildings and in maintaining the schools of such city. Whenever the territory so attached shall have attained a population equal to that of any one ward of such city, or whenever the taxable property of such attached territory shall equal that of any one ward of such city, such attached territory shall be entitled to elect two members of the board of education, who shall be elected at the same time that the other members of the board are elected, by the qualified electors of such territory, at an election to be held at such place as the board of education may designate."

The petition alleges that these particular tracts of land do not adjoin the city limits, but we presume that they are a part of the entire territory which has been by order or orders of the board of education of the city of Kingfisher attached to the city of Kingfisher-for school purposes. There is no allegation in the petition that these lands are not a part of such entire territory which does adjoin the city limits. There is no allegation that there are any lands between these lands and the city of Kingfisher which have not been attached to the city of Kingfisher for school purposes or that those are tracts disconnected from other portions of the entire school district of the city of Kingfisher.

The presumptions are in favor of the proper action of public officers, and there being no allegation that these lands do not adjoin other lands which do adjoin the city limits of the city of Kingfisher, we presume that these lands are a part of the entire territory attached to the city of Kingfisher for school purposes.

The proposition, tersely put, is as to whether, under this statute, particular tracts of land which do not actually adjoin the city limits of a city in this territory can be attached to such city for school purposes. It is contended by appellant that they cannot. He contends that the word "adjourning" in this statute was meant to be "adjoining," and that the tracts of

land which can be attached to the city for school pur-
poses must adjoin, that is, lie contiguous to such
limits. · The formation of this word indicates that the
word intended to be used by the legislature was "ad-
joining," but admitting that the proper word is "ad-
joining," ·does that preclude the city of· Kingfisher
from attaching ·tracts of ·land that are not adjoining
the city to the city for school purposes under this
statute? We think not. The statute says that "terri-
tory" outside of the city limits but adjoining thereto,
upon application to the board of education of a city
by a majority of the electors of the adjacent terri-
tory, may be attached for school purposes.

Construing the word "adjourning" to mean "ad-
joining," the words "adjoining," and "adjacent," re-
ferring to the outside territory, are both used in this
section of the statute, and used in connection with
the same subject matter; and while there is a differ-
ence in the meaning of the words when carefully con-
sidered, this difference was not a part of the intention
of the legislature when this statute was passed. The
word "adjoining" was used once, the word "ad-
jacent" twice, both in connection with the same
thought, purpose and idea, in the same connection,
and were evidently used intending to convey the same
meaning; and in the construction of statutes the in-
tention of the legislature, as may be gathered from
the entire enactment, must be taken to be the law.
( *Territory, ex rel. Sampson vs. Clark*, 35 Pac. Rep. 882).

We think in passing this statute the legislature
meant that territory lying contiguous to and in con-
tact with the city limits of a city but parts of which
might not actually touch the city limits, might be
attached to the city limits for school purposes. This
purpose is gathered from these two words when their
technical meaning is taken and considered together
and used with reference to the purpose and scope of

these enactments.   The legislature meant that terri-
tory adjoining and adjacent, that is, contiguous to
and near by the city limits of the city of Kingfisher,
might be attached to it for school purposes.    This
did not mean that the particular tracts of land should
actually adjoin the city limits.   The word "territory"
is too comprehensive to gather from this enactment
such a meaning.   Had the legislature meant that the
scope of the earth's surface which could be attached
to the city for school purposes, outside of the city
itself, should be confined to the tracts of land
described as forties, quarter sections or sections, as
different subdivisions of sections are known, such
intention could have been easily expressed in words
that bear such meaning.   The word "territory," how-
ever, shows no such intention.   There is no limit fixed
to the lands which might be attached to the city for
school purposes, except such as might be included
within a territory defined by the proper exercise of
the discretion of a school board acting upon a peti-
tion signed "by a majority of the electors of the
adjacent territory."   This very pre-requisite, that the
territory must be attached upon application of a
majority of the electors, indicates that tracts of land
lying next to the city limits was not the limit of ter-
ritory that might be attached to the city for school
purposes.

Had such been the intention the provision would
evidently have been that the territory might be at-
tached upon application of the owner of or resident
upon the particular tract of land that did lie contigu-
ous to the city limits.   The legislature did not intend
this.   It intended that, taking the entire territory to-
gether, composed of the tracts adjoining the city and
those farther out but adjacent thereto, such territory
might be attached when a majority of the electors
of such entire body are willing that such territory

composed of all of such lands should be attached.

If the plaintiff's construction of this statute is a correct one, what land is it that may be attached to the city for school purposes?   Is it the forty acre tracts; the quarter sections or the sections that lie contiguous to the city limits that are to be attached? There is nothing, with that construction placed upon the statute, that in any way fixes what lands are to be attached.   This view of the matter in itself indicates that the conclusion we arrive at is the only logical one that can follow the language of this statute.

The construction of the plaintiff placed upon this act would be a limitation of this legislative enactment not warranted either by the language or the purpose of the enactment.   Section 1, of the same article and chapter of the statute as that of § 2 referred to, provides that every city of the first class shall constitute a separate school district.   Without the provision of § 2, then, the school district of the city would be composed only of the territory within the city limits.   This § 2 was passed primarily for the benefit of those persons who live beyond the city limits but who preferred to be residents of the school district with the city.   The motion by the people of the outside territory to become a part of the school district of the city must be made by the people thereof, and no action can be taken by the officers of the city school district until application is made to its board of education by a majority of the electors of the adjacent territory.   If they consider that better school facilities will be afforded to their children in the city school than may be had in the country schools, or if they so desire for any other reason, they may ask that the outside territory be attached to the city for school purposes, the only limitation being that it must be adjoining and adjacent to the city.

If the residents of the land comprised within a strip a quarter of a mile wide may ask for the benefits afforded by the city school under this statute, why may not those of the next quarter, or the next, or the next, continuing on to any limit applied for by a majority of the electors, and which the board of education may deem "proper and for the best interests of the schools of said territory and the territory seeking to be attached." The purpose was to benefit the people of the outlying territory and of the city, which benefit could be arrived at by the application first made by the people of the outlying territory. The legislature has placed no limitation upon that territory excepting such as might be placed by the people themselves by their petition or application to be finally passed on by the board of education of such city.

The defining of school districts is a legislative matter. The legislature may do it in the manner they have by this statute, if they so desire.

The petition did not, therefore, affirmatively show that the action of the board of education of the city of Kingfisher was improper or unlawful, and if it is not unlawful, the county clerk had a right to proceed to do his duty in accordance therewith, and no cause of action was stated in the petition. The demurrer was therefore properly sustained.

The judgment of the court below is affirmed, with costs against the appellant.

Burford, J., having presided below, not sitting; all the other Justices concurring.